**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**NORTHERN DIVISION**

NANCY SCARBROUGH,

    *Plaintiff,*

v.

RAUSCH, STURM, ISRAEL,
ENERSON & HORNICK, LLP,
DAVID J. CANINE, and CROWN
ASSET MANAGEMENT, LLC,

    *Defendants*.

_____/

CASE NO. 1:18-CV-10462

DISTRICT JUDGE THOMAS L. LUDINGTON
MAGISTRATE JUDGE PATRICIA T. MORRIS

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION
ON DEFENDANTS' MOTION TO DISMISS**
**(Doc. 15)**

## I. Recommendation

Plaintiff Nancy Scarbrough has brought suit in this federal court against Defendants under the court's federal question jurisdiction based on her claim under the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* (Doc. 14.) For the reasons stated below, I recommend Defendants' motion to dismiss be **GRANTED IN PART AND DENIED IN PART**. (Doc. 15). If the recommendation is adopted, the only remaining claims under the FDCPA and RCPA would be: (1) the filing of a false affidavit claim; and (2) the claim that the debt was not properly verified in response to her request for verification.

## II.  Background and Arguments

Plaintiff's amended complaint alleges the following Counts: (1) violation of the Regulation of Michigan Collection practices Act ("RCPA"), MCL 445.251 *et seq.*; and (2) violation of the FDCPA.

Under the FDCPA claim, Plaintiff alleges that the "collection lawsuit and false Affidavit in the computerized format" which Defendants filed in state court was use of a materially false, deceptive and misleading representation or means in connection with collection of a debt in violation of § 1692e. (Doc. 14 at PageID.106) Plaintiff also alleges that Defendants made false, deceptive, and misleading representations concerning the legal status of the debt (by alleging a prior lawsuit was filed, i.e., that the debt was sued upon) in violation of § 1692e(2)(A). Plaintiff also alleges false representation or deceptive means were used because the "cut and paste signature" of the lawyer reveals that there was no "meaningful file involvement of an attorney and/or review of the client (Scarbrough) file" in violation of § 1692e(3) and (10). (*Id.*) Plaintiff also charges a violation of § 1692f "with the false attorney signature directly related to the collection efforts through the lawsuit" "and [c]ollecting amounts that are incidental to the principal obligation[,]" "[f]ailing to correctly state the amount of the debt owed" and "[f]ailing to respond to the Validation and Verification request of Plaintiff but continuing to collect upon the debt with a lawsuit[.]" (Doc. 14 at PageID.107)

Plaintiff attaches an affidavit wherein she states "I never signed up for the debt and don't know who did sign up for the debt in my name. I asked for validation of proof I

2

owed the debt. Rausch then sued me without validating or providing proper proof." (Doc. 14 at PageID.110.)

Plaintiff also attaches to her Complaint a letter dated September 11, 2017, from Dustin McMahon of the Defendant Rausch law firm stating, "Our office is in receipt of your request for verification of the debt in the above referenced matter. Enclosed, please find copy of the account statements and chain of title. The original creditor is Synchrony Bank (SamsClubPersonalCredit) and the current owner's name and address is CROWN ASSET MANAGEMENT…As of the date of this letter, the current balance is $1,375.68." (Doc. 14 at PageID.143.) Attached to the letter from the Rausch firm were copies of the Sam's Club Credit statement for Plaintiff's account and documents regarding the chain of title for the debt. (Doc. 14 at PageID.144-148.)

On May 2, 2018, Defendants filed the instant motion to dismiss (Doc. 15), Plaintiff responded (Doc. 18), and Defendants replied. (Doc. 19.) District Judge Thomas L. Ludington referred all pretrial management to the undersigned on March 15, 2018.) (Doc. 8.) With briefing concluded, the case is ready for Report and Recommendation.

**III.** <u>**Analysis**</u>

    **A.**     **Motion to Dismiss Standards**

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint and will be granted if the plaintiffs have failed "to state a claim upon which relief can be granted . . . ." "The court must construe the complaint in the light most favorable to the plaintiff, accept all the factual allegations as true, and determine whether the plaintiff can prove a set of facts in support of its claims that would

3

entitle it to relief." *Bovee v. Coopers & Lybrand C.P.A.*, 272 F.3d 356, 360 (6th Cir. 2001). But the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face," otherwise the complaint will be dismissed. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action . . . ." *Id.* When a plaintiff proceeds without counsel, the court must liberally construe the complaint and hold it to a less stringent standard than a similar pleading drafted by an attorney. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). However, even *pro se* complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989).

Because the dismissal standard scrutinizes the pleadings, the Federal Rules limit courts' consideration of extraneous materials at this stage. Rule 12(d) provides the operative language: "If, on a motion under Rule 12(b)(6) . . . matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." The "pleadings" the rule refers to are seven narrow classes of documents defined in Rule 7(a), among which is the complaint. Rule 10(c) states that a written instrument attached to a pleading as exhibits "is a part of the pleading for all purposes." Thus, the Court here can consider the exhibits to Plaintiff's complaint.

4

### B.     Arguments of the Parties

Defendants contend that: (1) this Court lacks jurisdiction over this dispute because although Plaintiff alleges a violation of the FDCPA, she does not allege any actual injury; (2) Plaintiff's Complaint fails to state a claim upon which relief can be granted because the Rausch Defendants verified the debt in response to Plaintiff's requests prior to filing the state court action; and (3) any alleged misrepresentations were not material under the FDCPA. (Doc. 15.) In addition, Defendants argue that since Plaintiff's RCPA claim is based on the same facts as the FDCPA claim, it should be dismissed for the same reasons. (*Id.*)

Plaintiff responds that: (1) the Court does have jurisdiction over this dispute because Plaintiff has alleged a concrete injury; (2) the Rausch Defendants failed to properly verify or validate the debt in response to Plaintiff's request prior to their filing of the lawsuit against her in state court; and (3) the misrepresentations made by Defendants were material, intentional, and injurious. (Doc. 18.)

Defendants reply that: (1) the Court lacks jurisdiction because the alleged failure of Defendants to comply with state court rules and state law procedures does not state an injury under the FDCPA, and because use of the phrase "obligation sued upon:" when no suit had yet been filed in state court did not result in an actual injury; (2) Defendant's validation letter was adequate and any failure to comply with the Michigan Occupational Code (MOC) does not state an actual injury; and (3) the alleged misrepresentations were not material since any use of cut and pasted signatures and reference to "obligations sued upon" could not have "fooled" or mislead the least sophisticated consumer, nor does

5

Plaintiff's complaint properly plead facts to support a claim for lack of meaningful attorney involvement. (Doc. 19.) Defendants also argue that "[f]or the first time in her Response, Plaintiff contends that the state court complaint improperly attempted to collect interest, costs and a statutory attorney fee, without providing 'support' for their right to collect these damages. A party cannot amend its pleading through a response to a dispositive motion." (Doc. 19 PageID.265.)

### C. Analysis

The Sixth Circuit has recognized that false or deceptive statements made in pleadings in state court proceedings are not immunized from suit under the FDCPA simply because the statements were made in state court. *See, Washington v. Roosen, Varchetti & Oliver, PPLC*, 894 F. Supp. 2d 1015, 1022 (W.D. Mich. 2012)(and Sixth Circuit cases cited therein).

The statements must be alleged to have misled the consumer, not the court, since the "FDCPA does not extend protection to communications to courts." *Hrivnak v. NCO Portfolio Management*, 994 F. Supp. 2d 889, 898 (W.D. Mich. 2014), citing *O'Rourke v. Palisades Acquisition XVI, LLC*, 635 F.3d 938, 940-41 (7th Cir. 2011)("The Fair Debt Collection Practices Act does not extend to communications that would confuse or mislead a state court judge.") In the instant case, Plaintiff has made the appropriate allegations to survive this threshold.

### 1. Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to hear actual cases and controversies. U.S. Const. art 3, § 2. The analysis of whether a

plaintiff has standing to bring a suit assists in defining the contours of this constitutional limitation. A plaintiff bears to burden to establish that he has standing to file suit. *Summers v Earth Island Inst.*, 555 U.S. 488, 493 (2009).

Standing requires that a plaintiff establish that: (1) he suffered an injury in fact that is (a) concrete and particularized and (b) actual or imminent rather than conjectural or hypothetical; (2) a causal connection between the injury and the defendant's alleged wrongdoing; and (3) an injury that can likely be redressed. *Lujan v. Defs. Of Wildlife*, 504 U.S. 95, 101 (1983).

In *Spokeo, Inc. v. Robins*, ___ U.S. ___, 136 S. Ct. 1540 (2016), the Supreme Court considered a plaintiff's standing under the Fair Credit Reporting Act (FCRA). The Court clarified that Congress may "identify intangible harms that meet minimum Article III requirement" but also emphasized that Congress cannot "erase Article III's standing requirements by statutorily granting the right to sue." *Spokeo*, 136 S. Ct. at 1547-48.

"This Circuit has had the occasion to interpret *Spokeo* and has concluded that a statutory violation in and of itself is insufficient to establish standing." *Lyshe v.Levy*, 854 F.3d 855, 859 (6th Cir. 2017).[1]

> [T]hough *Spokeo* allows for a bare procedural violation to create a concrete harm, the procedural violation alleged here – a violation of the state law procedure not required under the FDCPA – is not the type contemplated by *Spokeo*, which dealt with the failure to comply with a statutory procedure that was designed to protect against the harm the statute was enacted to prevent…Yet, the sort of harm alleged by Lyshe, namely that he would have been required to visit a notary and contact Appellees to obtain

---

[1] The Court declined to follow *Church v. Accretive Health, Inc.*, 654 F. App'x 990 (11th Cir. 2016),which held that if the right not to receive false information in connection with the collection of a debt under the FDCPA was violated, the person who received the false information necessarily suffered harm without any further showing.

7

> electronic copies of the discovery, was not the type of harm the FDCPA was designed to prevent. Moreover, Lyshe does not even allege that he suffered this harm, and concedes that he is at no risk to suffer this harm. The harm alleged is insufficient to confer standing before the federal courts.

*Lyshe*, 854 F.3d at 859.

The Court in *Lyshe* contrasted *McCollough v. Johnson, Rodenburg, & Lauinger, LLC*, 637 F.3d 939, 946, 952 (9th Cir. 2011) wherein the Ninth Circuit held that the plaintiff had standing where the defendants "intentionally misrepresented facts concerning the plaintiff's debt that they knew to be false, and did not inform the plaintiff that these falsities [as stated in the requests for admission] would be deemed true absent an objection from the plaintiff." *Lyshe*, 854 F.3d at 861.

The Sixth Circuit has affirmed the legitimacy of its decision in *Lyshe*. "We know of no circuit court decision since *Spokeo* that endorses an anything-hurts-so-long-as-Congress-says-it-hurts theory of Article III injury. Although Congress may 'elevate' harms that 'exist' in the real world before Congress recognized them to actionable legal status, it may not simply enact an injury into existence, using its lawmaking power to transform something that is not remotely harmful into something that is." *Hagy v. Demers & Adams*, 882 F.3d 616, 622 (6th Cir. 2018).

The Court recognized that the line between "what Congress may, and may not, do in creating an 'injury in fact'" may be difficult to draw. *Id*. at 623. "All we need say today is that Congress may not say that *anything* is an injury, and by saying so expect the federal courts to agree. Just as there must be *some* limits on Congress's power to regulate commerce." *Id*. Applying these principles to the facts, the Court found that the plaintiffs

8

failed to allege a concrete injury in fact where they complained that a letter from the defendant failed to disclose that it was a communication from a debt collector because there was no allegation that the "non-disclosure created a risk of double payment, caused anxiety, or led to any other concrete harm." *Hagy*, 882 F.3d at 622.

In the instant case, Plaintiff avers the following practices violated the FDCPA: (1) Defendants' "collection lawsuit and false Affidavit in the computerized format" which "forc[ed] Plaintiff to have to file a Counter-Affidavit in the State Court case because of Defendants['] use of a false Affidavit"; (2) Defendants made "false, deceptive, and misleading representations concerning the character, amount, or *legal status* of any debt and no validation of the amount sued upon" (citations omitted) since the state court lawsuit was not filed until December 14, 2017, three months after the affidavit was sworn out on September 20, 2017; (3) false representation or deceptive means were used because the "cut and paste signature" of the lawyer reveals that there was no "meaningful file involvement of an attorney and/or review of the client (Scarbrough) file"; (4) "false attorney signature directly related to the collection efforts through the lawsuit"; (5) "[c]ollecting amounts that are incidental to the principal obligation"; (6) "[f]ailing to correctly state the amount of the debt owed"; and (7) "[f]ailing to respond to the Validation and Verification request of Plaintiff but continuing to collect upon the debt with a lawsuit[.]" (Doc. 14 at PageID.106-107)

I consider (1) and (2) as alleging one violation and will address them as one allegation regarding the filing of a false affidavit. I note that although Defendants argue that "[f]or the first time in her Response, Plaintiff contends that the state court complaint

9

improperly attempted to collect interest, costs and a statutory attorney fee, without providing 'support' for their right to collect these damages" (Doc. 19 PageID.265,) the Amended Complaint does allege that Defendants improperly attempted to "collect[] amounts that are incidental to the principal obligation[.]" (Doc. 14 at PageID.107)

Plaintiff's arguments against the motion to dismiss focus on the violations that occurred without any mention of any actual harm caused by these violations with two exceptions. I will consider these first two specific claims first.

The first claim where harm is alleged is the claim wherein Plaintiff contends that the affidavit's reference to the obligation having been sued upon three months before any suit was actually filed forced Plaintiff to file a counter-affidavit to prevent Defendants from obtaining a false presumption of a *prima facie* Account Stated Complaint" under MCL 600.2145 and Mich. Ct R. 2.111(C). (Doc. 18 at Page.ID.187, 189.) This unsupported shifting of the burden in state court states an actual and concrete injury. *Newman v. Encore Capital Group*, No. 16-cv-11395, 2017 WL 3479510, at *10-11 (E.D. Mich. Aug. 14, 2017)(finding standing where defendants' alleged filing of falsely-notarized affidavits that shifted the burden of production to plaintiffs that they could not meet, forcing plaintiffs to file a motion to strike the affidavits to prevent entry of judgment against them which "forced" their hands and "put them at an unfair disadvantage in the state court collection proceedings.") *Id*. at *10.

The second claim alleging potential harm is Plaintiff's allegation that Defendants failed to properly "respond to the Validation and Verification request" while "continuing to collect upon the debt with a lawsuit[.]" (Doc. 14 at PageID.107) Defendants do not

appear to challenge Plaintiff's standing to bring this action but instead focus on the merits and argue that they did adequately verify the debt. (Doc. 19 at PageID.266-268) Accordingly, I too will address this claim under the merits section of this Report.

As to the remainder of the averred violations, Plaintiff simply argues that Defendants' reference to an "'actual injury' standard" "does not comport with the language used by the Supreme Court" in *Spokeo* and that the "vast majority of Courts facing Article III standing challenges in FDCPA cases post-*Spokeo* have determined that statutory violations thereof produced a 'concrete injury' sufficient for a showing of such standing…" (Doc. 18 at Page.ID.197) Plaintiff's argument is defeated by reference to the standards elucidated by the Sixth Circuit precedent referenced above.

I find that these remaining allegations do not state an actual concrete injury and thus, that Plaintiff lacks standing to bring them. *Newman, supra* (finding the plaintiff lacked standing to challenge the following collection practices: (1) defendants' labeling the collection complaints as "verified"; (2) defendants' "use of case captions and the words 'the obligation sued upon' in the Ownership and Delinquency Affidavits"; (3) defense counsel's "failure to meaningfully review the substance of the Collection Complaints prior to signing those complaints"; (4) defendants' "failure to attach documents to the Collection Complaint proving the underlying obligation" and (6) defendants' "use of the collection practices to secure default judgments from Michigan consumers and to collect debt that [defendant] does not own.")

Accordingly, I recommend that Defendants' motion to dismiss for lack of standing be granted as to all claims except: (1) the claim regarding the filing of the false affidavit

that shifted the burden of production in state court and (2) the claim that Defendants failed to properly verify the debt. I will thus turn to the merits of these two claims.

### 2. Merits

#### A. Filing of the false affidavit claim

Plaintiff alleges that the "collection lawsuit and false Affidavit in the computerized format" which Defendants filed in state court was use of a materially false, deceptive and misleading representation or means in connection with collection of a debt in violation of § 1692e and that Defendants made false, deceptive, and misleading representations concerning the legal status of the debt (by alleging a prior lawsuit was filed, i.e., that the debt was sued upon) in violation of § 1692e(2)(A). (Doc. 14 at PageID.106)

§ 1692e(2)(A) provides that a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt . . . [including] [t]he false representation of (A) the character, amount, or legal status of any debt . . . ." The standard for evaluating claims under this section is:

> Whether a debt collector's actions are false, deceptive, or misleading under § 1692e is based on whether the 'least sophisticated consumer' would be misled by defendant's actions. In addition, in applying this standard, we have also held that a statement must be materially false or misleading to violate Section 1692e. The materiality standard simply means that in addition to being technically false, a statement would tend to mislead or confuse the reasonable unsophisticated consumer.

*Wallace v. Washington Mutual Bank, F.A.*, 683 F.3d 323, 326 (6th Cir. 2012)(internal citations omitted). The presence or absence of actual confusion is not relevant. *Harvey v.*

*Great Seneca Finan. Corp.*, 453 F.3d 324, 331 (6th Cir. 2006), citing *Lewis v. ACB Bus. Servs.*, 135 F.3d 389, 400 (6th Cir. 1998).

The affidavit's language expressing that the debt had been sued upon, if true, would also mean that the burden of production had shifted to Plaintiff in the state court proceeding. This forced Plaintiff to file a counter-affidavit to prevent Defendants from obtaining a false presumption of a *prima facie* Account Stated Complaint. This allegation therefore states a claim of misstatement that could mislead or confuse a reasonable unsophisticated consumer. Accordingly, I suggest that the motion to dismiss be denied as to this claim. *Accord, Newman, supra.*

### B. Failure to verify the debt claim

Under § 1692g(b), "[i]f the consumer notifies the debt collector in writing" within thirty days of receiving "communication…in connection with the collection of any debt," that he disputes any portion of the debt, "the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt…"

Plaintiff also argues that Defendants failed to validate or verify the debt. (Doc. 18 at PageID.201-204) Defendants argue that Plaintiff "admits in her complaint that the debt was verified and even attaches Defendants' letter to her complaint. See Amended Complaint at ¶ 22 and at Exhibit 6, PageID 143." (Doc. 19 at PageID.266) Plaintiff's Amended Complaint states, in paragraph 22, that Plaintiff "again sought Validation of the debt prior to the lawsuit" but "Defendant Rausch did not validate the debt[.]" Doc. 14 at PageID.100) Plaintiff did not make any admission of verification in her complaint.

13

However, Plaintiff did attach, in Exhibit 6, a letter dated September 11, 2017, from Defendant Rausch to Plaintiff in response to Plaintiff's request for verification. The letter states, "The original creditor is Synchrony Bank (Sams Club personal Credit) and the current owner's name and address is CROWN ASSET MANAGEMENT, LLC, 3100 BRECKENRIDGE BLVD, STE 725, DULUTH, GA 30096. As of date of this letter, the current balance is $1,375.68." (Doc. 14 at PageID.143)

Plaintiff contends that this letter is insufficient verification, citing *Haddad v. Alexander, Zelmanski, Danner & Fioritto*, PLLC, 758 F.3d 777 (6th Cir. 2014). Defendants disagree.

In *Haddad*, the Sixth Circuit held that the "verification provision must be interpreted to provide the consumer with notice of how and when the debt was originally incurred or other sufficient notice from which the consumer could sufficiently dispute the payment obligation. The information does not have to be extensive. It should provide the date and nature of the transaction that led to the debt, such as a purchase on a particular date, a missed rental payment for a specific month, a fee for a particular service provided at a specified time, or a fine for a particular offense assess on a certain date." *Id.* at 786.

In the instant case, Defendants' letter does not provide any information other than the name of the original creditor, the current owner, and the amount currently owing. Plaintiff has consistently disputed owing any such debt. (Doc. 14 at PageID.110) ("I never signed up for the debt and don't know who did sign up for the debt in my name. I asked for validation of proof I owed the debt. Rausch then sued me without validating or providing proper proof.")

The notice in this case did not give Plaintiff much to go on to dispute the debt since it did not tell her what she allegedly purchased or the date on which she allegedly purchased the item or items. It does not specifically say where the debt was incurred but could be read as implying the purchase was made at a Sam's Club store of unknown location. I suggest that this allegation is sufficient to state a claim under the *Haddad* standard and therefore recommend that Defendants' motion be denied as to this claim.

### C. RCPA

Defendants contend that Plaintiff's RCPA claim is premised on the same facts as the FDCPA and should be dismissed for the same reasons. (Doc. 15 at PageID.174) Plaintiff also relies on its arguments under the FDCPA as to its claim under the RCPA. (Doc. 18 at PageID.205) In addition, the Amended Complaint refers to the standards under the RCPA mirroring the FDCPA. (Doc. 14 at PageID.97.) Therefore, the claims remaining under the FDCPA also remain under the RCPA.

I note that the parties refer to a Michigan Occupational Code (MOC) claim but the amended complaint only states two claims: one under the RCPA, and another under the FDCPA. (Doc. 14) Therefore, I do not address any potential MOC claim.

### IV.   Conclusion

For the above reasons, I suggest that the Amended Complaint should be dismissed in part. If the recommendation is adopted, the only remaining claims under the FDCPA and RCPA would be: (1) the filing of a false affidavit claim; and (2) the claim that the debt was not properly verified in response to her request for verification under § 1692g(b).

## V.     Review

Rule 72(b)(2) of the Federal Rules of Civil Procedure states that "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2); see also 28 U.S.C. § 636(b)(1).

Any party who is not an e-filer should mail any objections to the U.S. District Court Clerk's Office, 231 W. Lafayette Blvd, Detroit, MI 48226.

Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 155; *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). According to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each

issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  July 26, 2018
S/ PATRICIA T. MORRIS
Patricia T. Morris
United States Magistrate Judge

## **CERTIFICATION**

I hereby certify that the foregoing document was electronically filed this date through the Court's CM/ECF system which delivers a copy to all counsel of record.

Date: July 26, 2018
By s/Kristen Castaneda
Case Manager

17